IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

AIKEN DIVISION

| | | |
|---|---|---|
| BONNIE L. GRUBBS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:09-2002-MBS-JRM |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| BARNWELL COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Bonnie L. Grubbs ("Grubbs"), originally filed this case in the Court of Common Pleas for Barnwell County. The Defendant, Barnwell County ("the County"), removed the case to this Court on July 29, 2009. Grubbs alleges that her employer, the County, discriminated against her because of her age in violation of the Age Discrimination in Employment Act ("AEDA") when it failed to promote her to the position of E-911 Assistant.[1] The County filed a motion for summary judgment on August 19, 2010. Grubbs filed a response on October 7, 2010.

**Standard for Summary Judgment**

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension Serv., 815

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(g), DSC. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

F.2d 1001, 1005 (4th Cir.), *cert. denied*, 484 U.S. 897 (1987).  This does not mean that summary judgment is never appropriate in these cases.  To the contrary, "'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'"  *Id.* (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice."  Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, Defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact."  Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact."  *Id.* at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial."  Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).  The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  *Id.* and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995).  Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits [*see* Fed. R. Civ. P. 56(e)], depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial.  Baber, citing Celotex Corp., *supra*.  Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  Mitchell v. Data General Corporation, 12 F.3d 1310, 1316 (4th

Cir. 1993) and <u>DeLeon v. St. Joseph Hospital, Inc.</u>, 871 F.2d 1229, 1233 (4th Cir. 1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. <u>Martin v. John W. Stone Oil Distrib., Inc.</u>, 819 F.2d 547 (5th Cir. 1987) and <u>Evans v. Technologies Applications & Services Co.</u>, 875 F. Supp. 1115 (D.Md. 1995).

### Factual Background

The facts, either undisputed, or according to the Plaintiff as the non-moving party, with all reasonable inferences therefrom, to the extent supported by the record, are as follows:

1. Grubbs was born on October 16, 1951. (Pl.Mem., Ex. 6).

2. Grubbs has worked for the County at various times beginning in 1997 when she was hired to work in the Voter's Registration Office. (Pl.Dep., pp. 26-28).

3. In 2006 Grubbs was working part time in the Voter's Registration Office. (Pl.Mem., Ex. 11). She applied for the full time position of E-911 Assistant. (*Id.*). Sheryl Rutherford ("Rutherford"), an individual younger than Grubbs, was hired. (Pl.Dep., p. 37).

4. Rutherford was promoted to E-911 Coordinator and the position of E-911 Assistant was advertised. The advertisement stated the following qualifications for the position:

    - Must become National Incident Management System (NIMS) certified within probation period.

    - Requires high school diploma supplemented by five to six months of clerical experience, or any combination of education, training and experience that provides the required knowledge, skills and abilities.

    - Knowledge of and experience in various Computer Applications such as; word processing, spreadsheets,

3

          databases, basic networking, Adobe Acrobat and Excel.

(Pl.Mem., Ex. 8).

5. Grubbs again applied for the E-911 Assistant position as did, Jessica Barwick ("Barwick"), an individual who is over 20 years younger than Grubbs and who had never worked for the County. (Pl.Mem., Ex. 7).

6. The candidates were interviewed by Lisa Boland Johnson ("Johnson"), the County's Human Resources Director, Roger Riley ("Riley"), the County's Emergency Management Director, Nico Aguilar ("Aguilar"), Assistant County Administrator, and Rutherford, the E-911 Coordinator. (Johnson Dep., p. 7). Aguilar was not present for Grubbs' interview. (Pl.Dep., p. 43). On another day, two other applicants were interviewed by only Johnson and Riley. (Johnson Dep., p. 7).

7. Each applicant was asked the same five questions during the interview. Johnson made notes on the applicants' responses. The only notes that are part of the record are the notes from Grubbs' interview. (Johnson Dep., pp. 7-12 and Pl.Mem., Ex. 8).

8. After the interviews, the panel reviewed the applications[2] of the applicants, discussed the applicants, and decided to hire Barwick.

9. Grubbs filed a "Charge of Discrimination" with the South Carolina Human Affairs Commission ("SCHAC") dated June 3, 2008, alleging that she "was denied a

---

[2]Grubbs did not fill out a new application for the position. Instead, the panel considered Grubbs' application submitted in 2005 for the part-time Voter's Registration Office position. (Pl.Dep., Ex. 4, Johnson Dep. Pp. 24-28, and Pl.Mem., Ex. E).

      promotion from Clerk to Emergency Management Assistant/ E911 on or about February 15, 2008, based on her age." (Pl.Mem., Ex. 6).

10.    During the administrative process, the County's attorney wrote SCHAC and stated the reasons that Barwick was hired instead of Grubbs:

> Both Mrs. Grubbs and the successful applicant Ms. Jessica Barwick were interviewed by a hiring committee, including the director of Emergency Preparedness and the Human Resources Manager of Barnwell County. The Committee's decision to hire Ms. Barwick instead of promoting Ms. Grubbs from within was based on the fact that Jessica Barwick was familiar with and had experience in using Excel spreadsheets, which is necessary for tracking grant applications and for tracking grant expenditures of federal monies, and is important to the operations of the County Emergency Preparedness Division. Finally, Ms. Barwick has experience with inventory control and it was felt that her experience with inventory control would assist the department in tracking its supplies. When Ms Grubbs was asked about her experience with spreadsheets, she said she would need to take class to upgrade her skills, because she did not know how to use Excel.

(Pl.Mem., Ex. 7).

## Discussion

The ADEA provides:

It shall be unlawful for an employer–

    (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a).

A plaintiff must prove that "but for" the employer's motive to discriminate based on age, the employer would not have taken the adverse employment action against her. Gross v. FLB Financial Services, Inc., __ U.S. __, 129 S.Ct. 2343 (2009). A plaintiff may do this in one of two ways. First,

5

she may offer direct and/or circumstantial evidence under the ordinary standards of proof of the employer's intention to discriminate. Second, she may employ the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), scheme as adapted to ADEA cases to demonstrate a prima facie case of discrimination. EEOC v. Clay Printing Co., 955 F.2d 936, 940 (4th Cir. 1992).

In order to establish a prima facie case of age discrimination under the McDonnell Douglas framework, a plaintiff must show that:

> (1) she was in the protected age group;
>
> (2) she was discharged;
>
> (3) at the time of her discharge she was performing her job at a level that met her employer's legitimate expectations; and
>
> (4) following her discharge, she was replaced by someone of comparable qualifications under forty years of age, or significantly younger.

O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996); Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996), *cert. denied*, 520 U.S. 1116 (1997).

Under the familiar burden-shifting framework of the analysis, once the plaintiff carries the initial burden of proving a prima facie case, the employer bears the burden of articulating a legitimate, nondiscriminatory reason for the challenged employment decision. McDonnell Douglas, 411 U.S. at 802. By providing such an explanation, the employer rebuts the presumption of discrimination created by the prima facie case, and the presumption "drops out of the picture," having "fulfilled its role of forcing defendant to come forward with some response." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993). The plaintiff may then only prevail by persuading the factfinder that the employer's articulated reason was merely pretextual and that unlawful

discrimination had a determinative influence on the employer's decision.  Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993).

Grubbs does not rely on direct evidence, but on the McDonnell Douglas burden shifting scheme.  The County concedes for the purpose of summary judgment that Grubbs has established a prima facie case of age discrimination. (Def.Mem., p. 9).  The County asserts that Barwick was hired for the E-911 Assistant position because she was more qualified for the job than Grubbs.  Grubbs attacks the reasons offered by the County upon which it concluded that Barwick was more qualified for the position and argues that since the reasons are inconsistent and untrue, she has shown that the proffered reasons are pretextual.

**A.  Pretext**

    1. The County's Stated Reasons

The letter of the County Attorney to SCHAC (Pl.Mem., Ex. 7) stated three reasons why Barwick was more qualified: (1) "Barwick was familiar with and had experience in using Excel spreadsheets"; (2) Barwick had "extensive payroll experience"; and (3) Barwick had "experience with inventory control."

    2.  The Stated Reasons and Job Duties

The job duties of the E-911 Assistant position were stated in the advertisement for the position quoted above and in the actual job description. (Rutherford Dep., Ex. 3).  Riley was the witness who most fully described the actual duties of the E-911 Assistant during his deposition.  He explained that 50% of the County's 911 operation was funded by the Sheriff, a county contract and two federal grants.  According to Riley the most important aspect of the E-911 Assistant's position

"is maintaining two federal grants and a contract that Barnwell County has." (Riley Dep., p. 19). He further explained:

> (W)e have to submit this information every quarter, and its all done on spreadsheets, and all of it has to be extremely accurate in order for the County to get reimbursed from the two federal grants and contract is the bulk of that position...(A)ny money I spend has to be broken out between these three contracts, divided up in certain ways, and bills paid and then submitted correctly by reimbursement.

(*Id.*, pp. 19-20).

The letter written by the County Attorney to SCHAC is consistent with Riley's testimony. The letter stated that Barwick had experience with Excel spreadsheets "which is necessary for tracking grant applications and for tracking expenditures of federal monies, and is important to the operations of the County Emergency Preparedness Division." (Pl.Mem., Ex. 7).

Riley also testified that he thought Barwick's payroll experience was important to this function of the E-911 Assistant's position. According to Riley, Barwick "had an extensive knowledge of finance, I guess, ...this is money coming in, money going out. She seemed to have an extensive knowledge of that." Riley also testified that according to Barwick's application, "she had worked at a large company and managed payroll for...around 2000 people."[3] (Riley Dep., pp. 20-21). When specifically asked the importance of payroll experience to the E-911 Assistant position, Riley responded, "I guess being good with numbers, being accurate, because I know in payroll you have to be accurate, and this position requires extreme accuracy." (*Id.,* p. 34).

Again, Riley's testimony is consistent with the reason stated in the letter from the County Attorney to SCHAC. The letter stated, "it was felt that her extensive payroll experience was

---

[3]Barwick's application, discussed below, shows that she was not a manager but a payroll clerk for a large company.

important to tracking the pro rata contributions of grants to the payrolls of the employees of the Emergency Preparedness Division."[4]

The undersigned concludes that Riley's testimony and the letter to SCHAC are consistent in their reasoning with respect to the relative qualifications of Grubbs and Barwick on the most important function of the position - preparing spreadsheets to be submitted for reimbursement to the County from federal grants and contract.

The third reason for Barwick's selection stated in the letter from the County Attorney to SCHAC was that she had "experience with inventory control." Riley's testimony was inconsistent with this stated reason. When initially asked about the duties of the E-911 Assistant with respect to inventory control, Riley had no answer. (Riley Dep., pp. 32-33). Later, when specifically asked about ordering supplies for the office, Riley stated that the function only amounted to about 1% of the job.

In E.E.O.C. v. Sears Roebuck & Co., 243 F.3d 846, 849-50 (4th Cir.2001), the Fourth Circuit found that an employee showed pretext where the employer changed its story during the course of discovery and admitted that its earlier reason was inaccurate. *Id.* at 849-50. In Dennis v. Columbia Colleton Medical Center, Inc., 290 F.3d 639, 646-647, the Fourth Circuit found that inconsistent post-hoc explanations for employment decisions were probative of pretext. Where changing or

---

[4] Riley's deposition testimony also underscores Grubbs' misconception of the E-911 Assistant's duties relative to the spreadsheets. Riley was asked "isn't it [the position] mostly about maintaining the addresses." (Riley Dep., p. 19). In other words Riley was asked if the E-911 Assistant position involved data entry, the same function that Grubbs had been performing with respect to the spreadsheets in the Voter's Registration Office. Riley answered negatively and explained that the E-911 Assistant had to "manipulate" the data so that it could be submitted correctly for reimbursement. (Riley Dep., pp.19-22). According to Riley the position required more than data entry with respect to the spreadsheets.

different, but not inconsistent reasons are offered, however, no pretext has been found. *See, e.g.*, Holland v. Washington Homes, Inc., 487 F.3d 208, 217 n. 7 (4th Cir.2007) (no pretext where company told the employee and the court that employee was terminated for threatening to kill someone, but told a state agency that the employee was laid off to allow him to obtain unemployment benefits); Baldwin v. England, 137 Fed.Appx. 561, 563 (4th Cir.2005) (varying explanations offered by employee's supervisors to explain their refusal to promote her did not constitute pretext where they did not contradict each other, but rather reflected various consistent reasons she could not be promoted); *see also* Freeman v. North State Bank, 282 Fed.Appx. 211 (4th Cir.2008) (finding no pretext where employee was given a number of explanations for the monetary differences in employee bonuses that varied in depth and detail, but were not materially inconsistent).

This is not a case where the reasons articulated by the County in the letter to SCHAC have been abandoned in favor of more supportive reasons. The fact that the County included experience in inventory control in the letter, even though that experience is at best minimally relevant to the job functions, does not diminish the County's consistent reliance on Barwick's experience in the use and creation of spreadsheets and payroll which are relative to the most important functions of the position as described by Riley.

### 3. Applications of Grubbs and Barwick

As noted above, the selection panel had copies of the candidates' applications and relied upon them in making the decision to hire Barwick. Copies of the applications are in the record before the Court.

With respect to Grubbs, the selection panel had her application dated December 19, 2005, which she completed when applying for the part-time Voter's Registration Clerk position. (Riley

Dep., Ex. 3). This placed her at somewhat of a disadvantage in that a current application would have reflected her experience in that position. Grubbs' application stated her previous work experience, including that of working the County Auditor's Office. Under "specialized skills" she listed various computer proficiency as well as "spreadsheets."

Barwick also stated her prior work experience, none of which was with the County. Her work experience reflected a background in accounting, bookkeeping and payroll at Avondale Mills. Additionally, at one job she listed "order and maintain inventory" as a duty. Barwick specifically listed "data entry, create spreadsheets" as a job duty at Avondale Mills. (Riley Dep., Ex. 1).

### 4. Grubbs' Interview

As discussed above, the ability to create and use spreadsheets to submit financial data to obtain reimbursement from federal grants and a County contract was the most important aspect of the E-911 Assistant position. One of the five questions asked of each applicant was:

> What experience do you have developing spreadsheets and give me an example where you developed a spreadsheet.

(Riley Dep., Ex. 4).

By all accounts, Grubbs' response to this question was weak. Johnson's notes and deposition testimony show Grubbs' response, "Excel, direction, need more classes. Word, yes. Access, no experience." (Johnson Dep., p. 24). In other words, Grubbs responded that she needed to take additional classes on developing Excel spreadsheets. Riley's recollection was consistent with Johnson's notes. One of the things that concerned him about Grubbs' interview was that she "needed more experience or knowledge of" Microsoft Excel or Word. (Riley's Dep., p. 18). It was after this testimony that Riley explained that creating spreadsheets was an essential part of the position.

11

Grubbs' deposition testimony on the spreadsheet question is a bit confusing and supports the recollections of Johnson and Riley. Grubbs testified that Riley asked her if she knew how to use the spreadsheet. (Pl.Dep., p. 47). She responded that she needed to take more classes because Riley did not specifically state "Excel." (Pl.Dep., p. 48). Excel spreadsheets are the same spreadsheets used in the Voter's Registration Office to determine street addresses. (Pl.Dep., p. 47). Grubbs' testimony contradicts Johnson's notes which specifically refer to Excel. However, accepting Grubbs' testimony that Riley did not mention Excel, it is uncontradicted that Grubbs told the selection panel that she needed additional classes with respect to creating spreadsheets.

Another concern that Riley had was Grubbs' response to a question asking her to "(d)escribe a high stress situation and how you handled it." (Riley Dep., Ex. 4). Johnson's notes reflect "'can't handle' - look to supervisor - help." (*Id.*). Riley testified he was concerned with Grubbs' response because as supervisor, he might not be readily available in an emergency situation. (Riley Dep., p. 18).

Even though there are no notes reflecting the responses of Barwick and the other applicants to the questions in the record, the record does reflect that legitimate concerns about Grubbs' qualifications for the position were raised during her interview. Considering the information the selection panel had before it in making its decision, i.e., the applications and interviews, Grubbs has not shown that she was as qualified for the position as Barwick. Grubbs has not shown that the reasons proffered by the County for hiring Barwick instead of promoting her are false or materially inconsistent. Therefore, the undersigned concludes that Grubbs has not shown pretext.

### B. County Policy

The County maintains a written policy which gives its employees a preference when filling a vacancy. It states:

> A vacancy, defined as an opening created by an addition, separation, or promotion, will be posted internally on the County bulletin board for fifteen business days. Active employees will have first consideration. This does not mean that Barnwell County will hire a qualified internal candidate over a better-suited outside candidate. Some exceptions may apply.

(Johnson Dep., p. 20 and Ex. 9).

In the light most favorable to Grubbs, this rather vague policy would give an "active employee" a preference in hiring over a non-active employee. At the time of the hiring Grubbs was an active employee and Barwick was not. However, this policy would appear inapplicable because the County, based on the information it had, found Barwick to be a "better-suited outside candidate."

### Conclusion

Based on the above discussion, the undersigned concludes that Plaintiff has not shown the legitimate, non-discriminatory reasons articulated by the Defendant are a pretext for discrimination. Nor has Plaintiff shown a violation of the Defendant's policy. It is, therefore, recommended that Defendant's motion for summary judgment be **granted**.

_____
Joseph R. McCrorey
United States Magistrate Judge

Columbia, South Carolina

January 5, 2011